**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

JAMES IAN PICCIRILLI,                           *

Petitioner,                                     *

v.                                              *              Civil Action No. MJM-24-590
                                                               Criminal Action No. MJM-19-60
UNITED STATES OF AMERICA.                       *

                                                *

**MEMORANDUM**

Currently pending is petitioner James Ian Piccirilli's ("Petitioner") Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255. ECF 77. Respondent United States of America (the "Government") has filed a response in opposition to the motion, ECF 88, and Petitioner has filed a reply, ECF 94. An evidentiary hearing is not warranted. *See* Rule 8(a), *Rules Governing § 2255 Proceedings for the U.S. Dist. Cts.*; Loc. R. 105.6 (D. Md. 2023). For the reasons that follow, the motion shall be denied, and a certificate of appealability shall not issue.

I.      **FACTUAL BACKGROUND**

        **A.  Pre-Offense Conduct**

The following facts are drawn from the memorandum (ECF 77-2) and affidavit (ECF 77-3) submitted in support of Petitioner's motion, 77-3):

In 2017, Petitioner was hired by FJB Engineering ("FJB"), a manufacturer that specialized in the development and production of weapons primarily for law enforcement and the United States military. Pet. Mem. at 2; Pet. Aff. ¶ 12. Petitioner's job duties included the fabrication of parts for firearms, including machine guns, under FJB's Federal Firearms License ("FFL"). Pet. Mem. at 2; Pet. Aff. ¶ 13. The weapons that Petitioner designed for FJB were primarily for orders

1

placed by state and local law enforcement agencies and the United States military, and included parts covered under the FFL, including sound suppressers, sears, and other components that could be assembled into machine guns. Pet. Mem. at 3.

In September 2018, FJB informed Petitioner that it was placing him on a furlough for a period of thirty days. Pet. Mem. at 3; Pet. Aff. ¶ 17. During the thirty-day furlough period, Petitioner contacted with FJB employee Brooklyn Salisbury to confirm that he was still covered under the FJB's FFL. Pet. Mem. at 4; Pet. Aff. ¶ 11. According to Petitioner, FBJ did not send any request to the Federal Firearms Licensing Commission to remove Petitioner from FJB's FFL until October 11, 2018. Pet. Mem. at 5.

During the period from September 2018 through December 2018, Petitioner did work for other FFL holders, including the Machine Gun Nest and Condition One Weapons. Pet. Mem. at 4; Pet. Aff. ¶ 21. Petitioner's job duties with FJB, and his work with the Machine Gun Nest and Condition One Weapons, included repairing weapons and delivering gun parts, including parts that could be assembled into machine guns. Pet. Mem. at 4.

## B. Offense Conduct

The following facts are drawn from the statement of stipulated facts attached to the plea agreement Petitioner signed on November 5, 2019 (ECF 48 at 11–12):

On October 5, 2018, Petitioner took an MKE, model AT-43, 5.56 mm caliber firearm he owned to the home of another person and left it there. The firearm had a "buttstock" frame at its back, which converted it into a short-barreled rifle, as well as a "selector switch" adjusting how it fired, which converted it to fully automatic. These characteristics brought the firearm within the ambit of the National Firearms Act ("NFA"), which regulates short-barreled rifles, fully automatic firearms, and firearms that can be readily made fully automatic. A person may not possess such

2

firearms unless they are registered in the National Firearms Registration and Transfer Record (the "NFRTR"), and may not sell or transfer such firearms without prior approval of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (the "ATF"). Petitioner's firearm was not registered to him in the NFRTR. In December 2018, without the ATF's prior approval, Petitioner attempted to sell the firearm to an ATF undercover agent. Petitioner knew this firearm was an NFA firearm. The ATF arrested Defendant on December 14, 2018, before the sale was completed. Law enforcement agents executed search warrants on Petitioner's house and two vehicles he used. They recovered at least eleven NFA firearms and seven silencers. None of these items were registered to any person in the NFRTR.

## II.    PROCEDURAL HISTORY

### A.  Indictment

On February 7, 2019, Petitioner was charged in a four-count indictment. ECF 1. Count One of the Indictment alleged that the firearm Petitioner possessed on October 5, 2018, was a machine gun and that Petitioner knowingly possessed it in violation of 18 U.S.C. § 922(o). *Id.* at 1. Count Two alleged that Petitioner knowingly possessed ten other machine guns on or about December 14, 2018, in violation of 18 U.S.C. § 922(o). *Id.* at 2. Count Three alleged that Petitioner knowingly possessed unregistered silencers in violation of 26 U.S.C. §§ 5841, 5845(a), 5861(d), and 5871, and 18 U.S.C. § 921(a)(24). *Id.* at 3. Finally, Count Four alleged that Petitioner knowingly possessed an unregistered firearm, described as an IMI UZI, 9mm caliber firearm, on or about December 14, 2018, in violation of 26 U.S.C. §§ 5841, 5845(a), 5861(d), and 5871, and 18 U.S.C. § 921(a)(8). *Id.* at 4.

On February 13, 2019, Petitioner made his initial appearance on the Indictment. Following a detention hearing on February 15, 2019, Petitioner was released on conditions of supervision,

including location monitoring. ECF 15. Petitioner retained defense attorney Richard B. Bardos to represent him in this matter, and Mr. Bardos entered his appearance in June 2019. ECF 26; *see also* Bardos Aff. (ECF 88-2) ¶ 6.

### B. Guilty Plea

On September 18, 2019, upon motion of the Government, the Court scheduled a guilty plea hearing for Petitioner. ECF 40, 41. The Honorable Stephanie D. Thacker was the presiding judge at that time. In the initial plea agreement, Petitioner agreed to plead guilty to a proposed criminal information charging him with unlawfully attempting to transfer a firearm. *See* ECF 42. Upon review of the initial plea agreement, Judge Thacker advised counsel for the parties that she did not believe the charges to which Petitioner agreed to plead guilty were consistent with the law. *Id.*

Counsel for the parties revised the plea agreement, Pet. Mem. ¶ 26, which now required Petitioner to plead guilty to one count of possession of unregistered firearm. Plea Agreement (ECF 48) ¶ 1. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), the parties stipulated that an appropriate sentence did not exceed 36 months of imprisonment. *Id.* ¶ 9. The Government agreed to recommend a sentence no greater than 36 months of imprisonment and to dismiss any open counts against Petitioner at sentencing. *Id.* ¶ 10.

On November 5, 2019, pursuant to the second plea agreement, Petitioner waived indictment and entered a guilty plea to a Superseding Information charging him with a single count of possession of an unregistered firearm, in violation of 26 U.S.C. §§ 5841, 5845(a), 5861(d), and 5871, and 18 U.S.C. § 921(a)(8). ECF 45, 47, 48. Petitioner signed the plea agreement and waiver of indictment on November 5, 2019, attesting, in part, that he understood and voluntarily agreed to the terms of the plea agreement and was "completely satisfied with the representation of [his] attorney." ECF 48 at 9, 12; *see also* ECF 47 (waiver of indictment).

At an arraignment and guilty plea proceeding in open court on the same date, Petitioner was sworn, and the Court conducted a colloquy with him pursuant to Federal Rule of Criminal Procedure 11. *See generally* Arraignment Tr., Nov. 5, 2019 (ECF 79). During the hearing, Petitioner described his educational and professional background, denied having ever been treated for any mental illness or drug addiction,[1] confirmed that he did not have any hearing impairment or other disability that would prevent him from fully participating in the hearing, and accurately described the purpose of the court appearance. *Id.* at 4:16–7:4. Petitioner was advised of and confirmed his understanding of the elements of, and maximum penalties associated with, the offense charged in the Superseding Information; acknowledged his guilt for the offense; affirmed that the plea was not the result of any threat, coercion, or inducement; and affirmed that his counsel adequately represented him and did not leave undone anything Petitioner believed should have been done. *Id.* at 7:17–11:20, 24:5–25:17. Petitioner confirmed that he and his attorney had not found any defense to the charges in the Superseding Information. *Id.* at 25:12–14. He further confirmed his agreement to the stipulation of facts and stated on the record that he "had a firearm" that "was not registered to [him]" and "knew it was an NFA firearm." *Id.* at 17:9–21:13, 24:6–21.

The Court found after the colloquy with Petitioner that he was "competent and capable of entering into an informed plea[,]" there was "a sufficient factual basis for that plea[,]" and that Petitioner entered his guilty plea "freely and voluntarily" based on an understanding of the nature of the charges and consequences of the plea. *Id.* at 29:3–16. Petitioner was maintained on previously imposed conditions of supervision pending his sentencing hearing. *See id.* at 31:11–19.

---

[1] During preparation of the Presentence Investigation Report ("PSR"), Petitioner reported to U.S. Probation that he had been diagnosed with ADHD and prescribed medication to treat it. PSR (ECF 63). U.S. Probation also reported that Petitioner was diagnosed with other mental health conditions following an evaluation in February 2019 and that he had been attending individual counseling with "acceptable" progress. *Id.* Asperger syndrome was not indicated in Petitioner's mental health history.

### C. Sentencing

Each party filed two sentencing memoranda in advance of sentencing. *See* ECF 56, 60 (Petitioner's sentencing memoranda); ECF 58, 66 (Government's sentencing memoranda). Regarding the applicable provisions of the United States Sentencing Guidelines, in their sentencing memoranda, the parties disputed the applicability of an offense level enhancement provided in U.S.S.G. § 2K2.1(b)(1) for the number of firearms involved in the offense. The Government argued that Petitioner's offense level should be increased by four levels pursuant to § 2K2.1(b)(1)(B) because his offense, including relevant conduct, involved unlawful possession of between 8 and 24 firearms. ECF 58 at 2–3. Petitioner argued that the firearms recovered on December 14, 2018, should not count toward the § 2K2.1(b)(1) enhancement because he believed that he was still covered by an FFL on that date and did not know that his possession of firearms at that time was unlawful. ECF 56; ECF 60 at 7–9. In support of this argument, Petitioner's sentencing memoranda, filed by Mr. Bardos, outlined Petitioner's professional background in firearms manufacturing, his separation from FJB, his retention of weapons from FJB for demonstration purposes in fall of 2018, and his belief he was still covered by an FFL during this period. ECF 56; ECF 60 at 6–7. Specifically, Ms. Salisbury told Petitioner that he could not be removed from FJB's FFL until the ATF came to FJB for an inspection, but the inspection never occurred. ECF 60 at 6. She did not learn that Petitioner had been removed from the FFL until after his arrest. *Id.* Mr. Bardos separately presented other mitigating circumstances in support of his recommendation for a probationary sentence. *Id.* at 9–14.

Petitioner was sentenced on January 13, 2020. At the sentencing hearing, the Court accurately identified the dispute between the parties as to the applicable guidelines, heard oral argument from counsel for each party on the matter, and concluded that the § 2K2.1(b)(1)(B)

enhancement applied. ECF 75 at 12–28. The Court computed Petitioner's total offense level to be 19 and his criminal history category to be I, resulting in an advisory sentencing guidelines range of 30 to 37 months of imprisonment. *Id.* at 35–36. Mr. Bardos called Ms. Salisbury and several other individuals to speak on Petitioner's behalf as character witnesses. Sentencing Tr., Jan. 13, 2020 (ECF 75) at 49–59. Ms. Salisbury stated that she worked as an administrative assistant for FJB Engineering and had known Petitioner for about ten years. *Id.* at 52–53. She stated that she was under the impression that Petitioner was still under FJB's FFL, which she communicated to him on multiple occasions. *Id.* at 53–54.

The Court accepted the parties' Rule 11(c)(1)(C) agreement not to impose a sentence greater than 36 months of imprisonment. *Id.* at 10–11. After hearing from Petitioner's character witnesses and from counsel for each party as to the relevant sentencing factors under 18 U.S.C. § 3553(a), the Court imposed a sentence of 30 months of imprisonment to be followed by three years of supervised release and a $10,000 fine, finding this sentence to be reasonable and appropriate in consideration of the § 3553(a) sentencing factors. *Id.* at 38–72. Judge Thacker specifically rejected Petitioner's request for a downward variance and explained her reasoning for doing so. *Id.* at 67–69. Petitioner was directed to self-surrender to the United States Marshal Service on March 16, 2020, to begin serving his sentence. *Id.* at 75:17–24. The Court specifically advised Petitioner that he may be subjected to additional penalties if he failed to report to USMS as directed. *Id.*

Judgment was entered on June 14, 2020, and again directed Petitioner to self-surrender on March 16, 2020. ECF 71.

### D.  Post-Sentencing Events

On or about January 24, 2020, Petitioner disabled his location monitoring device, got rid of his phone, and did not self-surrender as ordered. *See United States v. Piccirilli*, Crim. No. ELH-20-361, ECF 57 at 10 (stipulated facts). Petitioner was located and arrested by law enforcement in New Salisbury, Indiana, in October 2020. *Id.* Petitioner was separately indicted for failure to surrender for service of sentence, in violation of 18 U.S.C. § 3146(a)(2), and made his initial appearance on November 13, 2020. Crim. No. ELH-20-361, ECF 1. An order of pretrial detention was entered, and Petitioner was detained at Chesapeake Detention Facility ("CDF") in Baltimore, Maryland. Crim. No. ELH-20-361, ECF 6. The matter was assigned to the Honorable Ellen L. Hollander as presiding judge. On September 20, 2021, Petitioner pleaded guilty to the Indictment in criminal case ELH-20-361, pursuant to a plea agreement. Crim. No. ELH-20-361, ECF 57. At the guilty plea hearing, Judge Hollander observed that Petitioner "certainly appear[ed] alert and oriented . . . ." Crim. No. ELH-20-361, Rearraignment Tr., Sep. 20, 2021 (ECF 57) at 6:3–4. On November 19, 2021, Petitioner was sentenced to 30 months of imprisonment to run consecutively with the sentence imposed in the instant case and three years of supervised release. Crim. No. ELH-20-361, ECF 73.

Petitioner did not file a direct appeal of his conviction and sentence in either of his two federal criminal cases.

### C.  Petitioner's Motion

On February 23, 2024, through new counsel, Petitioner filed a Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, with a memorandum and affidavit in support. ECF 77 (Mot.), 77-2 (Mem.), 77-3 (Aff.). In his memorandum and affidavit, Petitioner claims that he is diagnosed with ADHD and Asperger syndrome, and that these conditions require medication to control the

symptoms and enable him to maintain concentration. Pet. Mem. at 1; Pet. Aff. ¶¶ 5, 6. Petitioner claims that he was not permitted to take the medication necessary to control his symptoms while in prison but resumed medication on January 3, 2024, while on home confinement. Pet. Mem. at 2, 7, 8. Petitioner contends that his mental health condition during the relevant period prevented him from "effectively compar[ing] the pros and cons of entering a plea agreement versus proceeding to trial[,]"and from pursuing an appeal and filing a motion under 28 U.S.C. § 2255 within the one-year period provided in that statute. Mot. at 4, 5, 10.

Petitioner further claims that, while preparing his defense, he and Mr. Bardos were informed that another indictment would be forthcoming based on child sexual abuse allegations made against Petitioner by his estranged wife regarding her minor child. Pet. Mem. ¶ 21. Upon hearing of the forthcoming indictment, Mr. Bardos advised Petitioner to accept a plea offer made by the Government. Pet. Mem. ¶ 23. Petitioner was never interviewed by any law enforcement officer about the alleged child sexual abuse allegations and ultimately the charges were never brought against him. Pet. Mem. ¶ 22.

As separate grounds for relief, Petitioner argues that he was covered by an FFL during the charged time period and that he did not know that he was later removed from FJB's FFL or that his possession of NFA firearms during this period was unlawful. Mot. at 6. He contends that these facts provide a defense to the charges and that maintaining his conviction in light of these facts would constitute a miscarriage of justice. *Id.* Petitioner further contends that Mr. Bardos "refused to explore" Ms. Salisbury as a potential witness or coverage under FJB's FFL as a possible defense. Pet. Mem. ¶ 19.

### D.  Government's Opposition

The Government filed a response in opposition to the motion on June 5, 2024, with three exhibits, two of which were filed under seal. ECF 87, 87-1, 88, 88-2. The sealed exhibits include medical records from CDF and BOP. ECF 87, 87-1. The CDF medical records show that, in January and February 2021, Petitioner's thought process presented as "organized/linear," "goal directed," and "[l]ogical," with "normal" concentration and cognition. ECF 87 at 1–6. These findings remained consistent through August 2021. *Id.* at 7–24. The BOP medical records reflect that, in February 2022, Petitioner denied mental health symptoms and need for mental health treatment, and he "expressed psychological stability at this time." ECF 87-1 at 1–2. Petitioner presented "no significant level of functional impairment associated with mental illness, demonstrate[d] no need for regular mental health interventions, and ha[d] no documented history of serious functional impairment due to mental illness." *Id.* at 2.

The Government also presents an affidavit from Mr. Bardos stating his professional background, including extensive experience in federal criminal defense, and that he was privately retained to represent Petitioner in the instant matter in June 2019. Bardos Aff. (ECF 88-2) ¶¶ 1–6. Mr. Bardos states that a guilty plea to the one firearm Petitioner transferred in October 2018 and attempted to sell to the ATF undercover agent in December 2018 was agreed upon to avoid trial on the remaining counts of the Indictment, involving numerous other firearms. *Id.* ¶ 13. He points out that the plea agreement permitted Petitioner to argue the legality of his possession of firearms recovered through search warrants in December 2018. *Id.* Mr. Bardos disputes Petitioner's contention that he failed to explore Ms. Salisbury as a witness, stating that he interviewed Ms. Salisbury several times but she did not have any relevant information about Petitioner's firearm transfer in October 2018 or attempted sale in December 2018. *Id.* ¶¶ 14–16. What helpful

information Ms. Salisbury did provide was noted in sentencing memoranda Mr. Bardos filed in advance of sentencing. *Id.* ¶¶ 15–16.

Mr. Bardos denies that he stopped investigating and preparing defenses when he became aware of child sex abuse allegations or that he used the prospect of child sex abuse charges to coerce Petitioner to plead guilty. *Id.* ¶¶ 17–21. Mr. Bardos perceived the allegations to be an attempt by Petitioner's estranged wife to gain leverage in divorce and child custody matters unrelated to the instant case and was not aware of there being any actual prospect of criminal charges based upon them. *Id.* ¶¶ 18, 21. Regarding the plea agreement, Mr. Bardos merely advised Petitioner of its benefits in the instant matter, including avoiding conviction under the federal criminal code and credit at sentencing for acceptance of responsibility. *Id.* ¶ 20. Mr. Bardos states that, although Judge Thacker questioned the legal basis for the charge agreed-upon in the parties' initial plea agreement, there was no legitimate defense to the charge made in the Superseding Information based on the undisputed facts. *Id.* ¶ 25.

Mr. Bardos finally denies that he failed to ensure Petitioner's full understanding of his plea agreement and the consequences of his guilty plea. *Id.* ¶¶ 26–27. During five months of close contact with Petitioner, Mr. Bardos did not observe any behavior on Petitioner's part to indicate a need for medication to understand the charges, the plea agreement, or its consequences. *Id.* ¶ 27. To the contrary, according to Mr. Bardos, Petitioner was "fully competent" and asked questions related to the case and provided information that was helpful to the defense investigation and preparation for sentencing. *Id.* Mr. Bardos did not observe any evidence of Asperger syndrome in his interactions with Petitioner. *Id.*

### E.  Petitioner's Reply

On August 30, 2024, Petitioner, now proceeding pro se, filed a reply in support of his motion. ECF 94. In his reply, Petitioner asserts that he is actually innocent of the offense to which he pleaded guilty. He states that he agreed to incorrect facts at the time of his plea agreement because he was improperly medicated, he was pressured into taking the guilty plea agreement by Mr. Bardos, and he did not fully understand it at the time.

### III.    STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a prisoner serving a federal sentence in custody may seek to vacate, set aside, or correct his sentence on the ground that (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence "is otherwise subject to collateral attack[.]"

"In deciding whether to grant an evidentiary hearing [on a habeas petition], a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted). If, on the other hand, "the record refutes the [petitioner's] factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*; *see also Berry v. United States*, 884 F. Supp. 2d 453, 463 (E.D. Va. 2012) (declining to hold an evidentiary hearing where the factual record precludes the possibility of relief). Such a determination falls within the district court's discretion. *See Shriro*, 550 U.S. at 475.

## IV.    MOTION TO VACATE

Although styled as a "Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255," Petitioner's motion is, in substance, a collateral attack on his guilty plea. *See* Pet. Mem. at 1. First, Petitioner claims that Mr. Bardos provided ineffective assistance by "rel[ying] on the possibility of other criminal charges" to "insist[]" that Petitioner accept the Government's plea offer and forcing Petitioner to enter into his plea agreement. *Id.* at 5. Petitioner also claims that he was not receiving necessary medical treatment for his mental health conditions when he pleaded guilty.[2] *Id.* Finally, Petitioner asserts defenses to the charge to which he pleaded guilty and argues that his conviction violates federal law and constitutes a miscarriage of justice. *Id.* at 6.

Before addressing the merits of each of Petitioner's asserted grounds for relief, the Court will first address the untimeliness of the motion.

### A.  Untimeliness of Petitioner's § 2255 Motion

A one-year statutory deadline applies to motions to vacate or correct a conviction or sentence under 28 U.S.C. § 2255. The one-year period runs from the latest of:

> (1) The date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[2] Petitioner casts this contention as a clam of ineffective assistance of counsel, but he does not allege that Mr. Bardos was aware of his claimed mental health conditions, his claimed need for medical treatment, or his lack of treatment. For this reason, the Court does not construe Petitioner's arguments about his mental health conditions and treatment as a claim of ineffective assistance. Mr. Bardos could not have acted on information of which he was not aware.

> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Petitioner's filing of his § 2255 motion was not timely. Judgment was entered and became final on January 14, 2020. ECF 71. Thus, his § 2255 motion was due to be filed by January 2021. Petitioner ultimately filed his motion more than *three* years late—on February 23, 2024. ECF 77.

If a § 2255 motion is untimely, the court will apply equitable tolling in "those 'rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Whiteside v. United States*, 775 F.3d 180, 184 (4th Cir. 2014) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc)). A petitioner is entitled to equitable tolling only "if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing" *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "As a general matter, the federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity." *United States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004)

Here, the Court finds that Petitioner is not entitled to equitable tolling. He has neither presented nor proffered any evidence to suggest that he diligently pursued his rights under § 2255 before the untimely filing of his motion. The only circumstance he alleges prevented timely filing is the condition of his mental health during the period of his incarceration and alleged lack of adequate treatment. Petitioner was indeed incarcerated at CDF, pending trial in a separate case, when his § 2255 motion in the instant case was due. During that time, according to medical records, Petitioner's thought process presented as "organized/linear," "goal directed," and "[l]ogical," with "normal" concentration and cognition. ECF 87 at 1–6. In February 2022, while in BOP custody,

Petitioner denied mental health symptoms and need for mental health treatment, and he "expressed psychological stability" at that time. ECF 87-1 at 1–2. Petitioner presented "no significant level of functional impairment associated with mental illness, demonstrate[d] no need for regular mental health interventions, and ha[d] no documented history of serious functional impairment due to mental illness." *Id.* at 2. Furthermore, Asperger syndrome diagnosis was not reported during Petitioner's presentence investigations, and Mr. Bardos did not observe any evidence of this diagnosis during his representation of Petitioner. Bardos Aff. ¶ 27. There is no indication of any "profound mental incapacity." *Sosa*, 364 F.3d at 513. Petitioner offers no information to rebut the substantial evidence that his ability to file a motion was impaired in any way before it was due in February 2021. Equitable tolling is not applicable in these circumstances.

Although the untimeliness of Petitioner's motion is by itself sufficient grounds to dismiss the motion, it may also be denied on the merits, for the reasons explained below.

### B. Petitioner's Claims of Ineffective Assistance of Counsel

Petitioner argues that he was denied effective assistance of counsel when Mr. Bardos encouraged him to plead guilty, did not investigate whether Ms. Salisbury could serve as a defense witness, and stopped working on the case based on the prospect of separate charges that were never filed. *See* Mot. at 4; Pet. Mem. at 8–12. Petitioner cannot succeed on these claims.

To be sure, the Sixth Amendment to the U.S. Constitution guarantees a criminal defendant the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017). To mount a successful challenge based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-pronged test set forth in *Strickland*, 466 U.S. at 687–88. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). First, the petitioner must show that counsel's performance was deficient. Second, the petitioner

must show that he was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687; *see also Buck*, 137 S. Ct. at 775.

As to the first prong, the petitioner must demonstrate that his attorney's performance fell "below an objective standard of reasonableness." *Strickland,* 466 U.S. at 688; *see also Harrington v. Richter*, 562 U.S. 86, 104 (2011). The central question is whether "an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 690). The Supreme Court has reiterated that the "first prong sets a high bar." *Buck*, 137 S. Ct. at 775. Notably, a "lawyer has discharged his constitutional responsibility so long as his decisions fall within the 'wide range of professionally competent assistance.'" *Id.* (citation omitted). The standard for assessing such competence is "highly deferential" and carries "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Judicial scrutiny of counsel's performance must be "highly deferential" and not based on hindsight. *Stokes v. Stirling*, 10 F. 4th 236, 246 (4th Cir. 2021) (citing *Strickland*, 466 U.S. at 689).

Second, the petitioner must show that his attorney's deficient performance "prejudiced" the representation. *Strickland*, 466 U.S. at 687. To satisfy the "prejudice prong" in the context of a guilty plea, a petitioner must show that there is a reasonable probability that he would have insisted on going to trial but for the counsel's errors or that the errors otherwise affected the plea process. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings. *Strickland*, 466 U.S. at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a

petitioner alleging ineffective assistance of counsel must show that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. at 696.

First, Petitioner fails in his claim that his attorney's performance fell below an objective standard of reasonableness when he failed to investigate Ms. Salisbury as a potential witness. The sentencing memoranda filed on Petitioner's behalf, the record at sentencing, and Mr. Bardos's affidavit all disprove Petitioner's allegation that Mr. Bardos failed to pursue Ms. Salisbury as a witness. Ms. Salisbury was provided information used in Petitioner's sentencing memoranda, and she was presented as a character witness at sentencing. To the extent Petitioner argues that Mr. Bardos could have made greater use of Ms. Salisbury's information, such as using it to contest his charges, Petitioner fails to identify any information Ms. Salisbury had that would have supported any effective defense to the charge in the Superseding Information.

Petitioner also fails to establish that Mr. Bardos's performance was ineffective for advising Petitioner to accept the Government' plea offer. Petitioner's plea agreement allowed him to admit guilt for a single offense under the federal tax code rather than face trial and the prospect of conviction on all counts of the Indictment, which included charges under the criminal code. The Court's resolution of the parties' disputes over the applicable sentencing guidelines suggests that Petitioner's legal arguments against the charges in the Indictment would have likely failed. If Petitioner was convicted of all counts in the Indictment at trial, his sentencing exposure, and collateral consequences of his conviction in this case, would have been substantially greater. Concessions the Government made in the plea agreement, of course, included agreements not to recommend any sentence that exceeded 36 months of imprisonment and to dismiss the Indictment. In these circumstances, Petitioner cannot show that any advice Mr. Bardos gave Petitioner to accept the plea offer was deficient.

Petitioner's claim that Mr. Bardos coerced him to accept the Government's plea offer based on the prospect of child sex abuse charges also fails. Unless extraordinary circumstances bid otherwise, courts should not give credence to a petitioner's allegations that contradict the sworn statements he made during a plea colloquy. *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (citation omitted). A defendant's "solemn declarations in open court affirming a [plea] agreement . . . 'carry a strong presumption of verity,'" such that "they present 'a formidable barrier in any subsequent collateral proceedings.'" *United States v White*, 366 F.3d 291, 295–96 (4th Cir. 2004) (quoting *Blackledge v. Allison*, 431 U.S. 63, 76 (1977)). Here, Petitioner denied under oath at his guilty plea hearing that any threats or coercion were used to force him to plead guilty. He also affirmed that his counsel adequately represented him and did not leave undone anything Petitioner believed should have been done. Any contention that Petitioner was threatened or coerced into his guilty plea contradicts his sworn statements and is not entitled to credence. See

As such, Petitioner's ineffective assistance of counsel claims fail.

## C.  Petitioner's Challenge to His Guilty Plea and Conviction

Setting aside his claims of ineffective assistance, Petitioner appears to challenge his guilty plea and conviction on two other fronts. First, he contends that, at the time he entered his guilty plea, he was suffering from mental health conditions, including ADHD and Asperger syndrome, for which he was not receiving adequate treatment. Pet. Mem. at 1–2.[3] Second, Petitioner argues

---

[3] Insofar as Petitioner raises his mental health conditions in support of a claim for ineffective assistance, this argument fails because he does not allege that Mr. Bardos was aware of his need for medication to participate rationally in his defense or enter a guilty plea knowingly and voluntarily. For his part, Mr. Bardos states in his affidavit that he observed "nothing in [Petitioner's] behavior to indicate that he needed medication to understand what was happening." Bardos Aff. ¶ 27. According to Mr. Bardos, based on several months of representing Petitioner in this matter, Petitioner's participation was "fully competent." *Id.* Specifically, Petitioner "asked questions related to the case, provided helpful information during the investigation by the defense, as well as for sentencing." *Id.* Mr. Bardos observed "no evidence of Asperger's syndrome." *Id.*

that he is actually innocent of the offense to which he pleaded guilty, and his conviction violates federal law and constitutes a miscarriage of justice. *See* ECF 77 at 5; Pet. Mem. at 12–14. Petitioner cannot prevail on either of these claims.

"It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal quotation marks and citation omitted). "[E]ven the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Id.* Failure to challenge the validity of his guilty plea on direct appeal constitutes a procedural default of any such challenge on habeas review. *Id.* One of two showings may excuse a procedural default: (1) cause for the default and prejudice resulting the claimed error; or (2) actual innocence. *United States v. McKinney*, 60 F. 4th 188, 193 (4th Cir. 2023); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley*, 523 U.S. at 622. "To demonstrate *actual innocence* sufficient to excuse procedural default, a defendant must show that he is actually innocent of (i) the charge on which he was convicted *and* (ii) more serious, dismissed charges." *McKinney*, 60 F. 4th at 197 (citing *Bousley*, 523 U.S. at 624).

First, even setting aside Petitioner's procedural default, he has presented no grounds for questioning the voluntariness or validity of his guilty plea. He has neither presented nor proffered sufficient evidence to suggest that either ADHD or Asperger syndrome interfered with his ability to understand the charges against him, to consult with Mr. Bardos rationally, or to understand the consequences of his guilty plea. To the contrary, the record clearly establishes that Petitioner was competent at the time of his guilty plea and entered the plea voluntarily and intelligently. Upon entering into the plea agreement, Petitioner swore that he read the agreement, reviewed every part with his attorney, understood it, and voluntarily agreed to it. At his guilty plea hearing, Petitioner

denied having ever been treated for any mental illness and denied having any disability that interfered with his participation in the hearing. He also accurately described the purpose of the hearing and confirmed his understanding of the charges and maximum penalties. In his § 2255 motion, Petitioner neither presents nor proffers any evidence sufficient to overcome his sworn statements upon entering his guilty plea. *See White*, 366 F.3d at 295–96 (defendant's sworn statements affirming plea agreement in open court "present 'a formidable barrier in any subsequent collateral proceedings'") (citation omitted). In consideration of Petitioner's sworn statements, the Court found him to be competent and to have pleaded guilty "freely and voluntarily." Moreover, as explained in Part IV.A *supra*, the Government has presented substantial evidence to suggest that any mental health challenges Petitioner has suffered have not significantly interfered with his ability to think logically, cognition, or concentration, or any other aspect of his mental functioning. Notably, Petitioner's presentence investigations revealed no Asperger syndrome diagnosis or functional impairment. Thus, Petitioner's challenge to his guilty plea based on his mental health status fails.

Second, Petitioner's procedurally barred collateral attack on his guilty plea is not justified by his claim of actual innocence. The only grounds asserted for Petitioner's claim of actual innocence are that he understood himself to be covered by his employers' FFLs during the period of his offenses (which he contends made his possession of NFA firearms lawful), that he did not know during that period that his possession of NFA firearms was unlawful, and that he agreed to incorrect facts at his guilty plea hearing. These arguments are unavailing.

The statute under which Petitioner was convicted, 26 U.S.C. § 5861(d), makes it "unlawful for any person . . . to receive or possess a firearm which is not registered to him in the [NFRTR.]" To prove a violation of this statute, the Government must establish that "(1) the defendant

possessed a firearm; (2) the defendant knew of the firearm's characteristics; and (3) the firearm was not registered to him." *United States v. Springer*, 609 F.3d 885, 888–89 (6th Cir. 2010) (citing *Staples v. United States,* 511 U.S. 600, 602 (1994), and *United States v. Freed,* 401 U.S. 601, 612 (1971) (Brennan, J., concurring in the judgment). "There is no requirement under the statute that the defendant knew that his possession was unlawful, or that the firearm was unregistered." *United States v. Miller*, 255 F.3d 1282, 1286 n.3 (11th Cir. 2001) (citing *Freed,* 401 U.S. 601); *see also Springer*, 609 F.3d at 889.

Here, Petitioner and the Government stipulated that Petitioner possessed a firearm on October 5, 2018, that he knew was an NFA firearm, and that the firearm was not registered to him in the NFRTR. At his guilty plea hearing, Petitioner confirmed his agreement to these facts, stating specifically under oath that he "had a firearm" that "was not registered to [him,] . . . [knowing] it was an NFA firearm." These facts were sufficient to support his guilty plea. Whether Petitioner knew his possession of the firearm was unlawful and whether he was covered by an employer's FFL are irrelevant. And any claim by Petitioner now that facts he attested to be true at his guilty plea hearing is not entitled to credence. *See Lemaster*, 403 F.3d at 221 ("[I]n the absence of extraordinary circumstances, . . . allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'") (citations omitted).

Accordingly, Petitioner fails to establish entitlement to relief under 28 U.S.C. § 2255 based on his claim of actual innocence or his claim to have suffered from untreated mental disorders at the time of his guilty plea.

## V.    CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Cases provides that the district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Because the accompanying Order is a final order adverse to the applicant, 28 U.S.C. § 2253(c)(1) requires issuance of a certificate of appealability before an appeal can proceed. A certificate of appealability may issue if the prisoner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court rejects constitutional claims on the merits, a petitioner may satisfy the standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner has failed to satisfy this standard on any of his claims. Therefore, a certificate of appealability shall not issue.

## VI.    CONCLUSION

For reasons stated herein, Petitioner's Motion to Vacate pursuant to 28 U.S.C. § 2255 is DENIED. No certificate of appealability shall issue. A separate Order follows.


__11/27/24__                                        __/S/__
Date                                        Matthew J. Maddox
                                        United States District Judge